OPINION
{¶ 1} Defendant-appellant, J.B., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, dismissing his petition for postconviction relief without holding an evidentiary hearing.
 {¶ 2} In June 2003, two complaints were filed in the juvenile court against then 13-year-old appellant, one alleging delinquency for committing domestic violence, and the other alleging delinquency for committing murder. The complaints arose out of an incident wherein appellant allegedly killed his 13-month-old brother by striking him with a metal bar on his back and choking him around the neck. In July 2003, appellant was indicted by a grand jury on one count of child endangering and one count of murder. The grand jury found appellant age-eligible for disposition as a "serious youthful offender". Appellant entered a plea of "not true" to the allegations. Pursuant to a court order, appellant underwent two competency evaluations. One evaluator found appellant competent to stand trial whereas the other evaluator did not. The juvenile court held a hearing where it heard testimony from both evaluators, as well as argument from the parties. After denying appellant's motion for a third competency evaluation, the court found appellant competent to stand trial. In June 2004, a jury found appellant guilty of child endangering and murder.
 {¶ 3} In August 2004, the juvenile court ordered appellant to be committed to the Department of Youth Services until he reached the age of 21. The juvenile court also ordered a serious youthful offender ("SYO") dispositional sentence. The court ordered concurrent sentences of 15 years to life for murder, and two years for child endangering. The court stayed the SYO portion of appellant's sentence, pending appellant's successful completion of his juvenile sentence. Appellant appealed his convictions. On December 30, 2005, this court affirmed the convictions. In reJ.B., Butler App. No. CA2004-09-226, 2005-Ohio-7029.
 {¶ 4} In May 2005, appellant filed a petition for postconviction relief ("PCR") alleging eight grounds for relief. In support of the petition, appellant submitted his own affidavit, the affidavit of his guardian ad litem at trial, the affidavit of Jolie S. Brams, a clinical psychologist, the affidavit of Werner U. Spitz, M.D., and the affidavit of Bradley Carmella, appellant's trial counsel. The juvenile court dismissed the petition without holding an evidentiary hearing, finding:
 {¶ 5} "Six claims involve allegations of ineffective assistance of counsel. The remaining claims for relief address competency and the child's classification as a serious youthful offender. The claims are a matter of record, could have been raised at trial and/or are assignments of error raised on [appellant's] appellate brief." The court found that appellant's claims were barred by the doctrine of res judicata and therefore were "subject to dismissal without further hearing. [Appellant's] grounds for relief do not create sufficient facts to demonstrate constitutional error."
 {¶ 6} Appellant subsequently moved the juvenile court for relief from judgment under Civ.R. 60(B)(5). The juvenile court denied the motion. On appeal, appellant challenges the juvenile court's denial of both his PCR petition and Civ.R. 60(B)(5) motion, raising four assignments of error. Because appellant's first three assignments of error deal with the dismissal of his PCR petition, they will be addressed together.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN APPLYING THE DOCTRINE OF RES JUDICATA TO [APPELLANT'S] CLAIMS FOR RELIEF, THUS VIOLATING [APPELLANT'S] CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND SECTIONS 5 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION."
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "THE TRIAL COURT ERRED IN DISMISSING [APPELLANT'S] PETITION WITHOUT AN EVIDENTIARY HEARING BECAUSE [APPELLANT] PROVIDED SUFFICIENT EVIDENCE THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, EQUAL PROTECTION, AND A FAIR TRIAL."
 {¶ 11} Assignment of Error No. 3:
 {¶ 12} "THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] PETITION FOR POST-CONVICTION RELIEF BECAUSE [APPELLANT] ESTABLISHED HE WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, EQUAL PROTECTION, AND A FAIR TRIAL, AS GUARANTEED BY THE FIFTH, SIXTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 2, 10, AND 16, ARTICLE 1 AND SECTION 39, ARTICLE II OF THE OHIO CONSTITUTION."
 {¶ 13} The essence of appellant's argument under his first three assignments of error is that his right to due process was violated by the juvenile court's dismissal of his petition without an evidentiary hearing. Appellant argues that the affidavits attached to his petition presented sufficient evidence outside the record to bar the application of res judicata and to justify a hearing.
 {¶ 14} A criminal defendant challenging his conviction through a PCR petition is not automatically entitled to an evidentiary hearing. State v. Hicks, Butler App. No. CA20040-7-170, 2005-Ohio-1237, ¶ 9. Pursuant to R.C. 2953.21(C), a trial court properly denies a defendant's PCR petition without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. Id. A trial court may also dismiss a PCR petition without an evidentiary hearing when the claims raised in the petition are barred by the doctrine of res judicata. State v. Perry (1967),10 Ohio St.2d 175, paragraphs six and seven of the syllabus. A trial court's decision to grant or deny an evidentiary hearing is within the sound discretion of the trial court. Hicks at ¶ 9.
 {¶ 15} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment." Perry at paragraph nine of the syllabus.
 {¶ 16} The presentation of competent, relevant, and material evidence outside the record may preclude the application of res judicata. State v. Lawson (1995), 103 Ohio App.3d 307, 315. However, the evidence presented outside the record must meet some threshold standard of cogency; otherwise, it would be too easy to defeat the res judicata doctrine by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery. Id. To overcome the res judicata bar, evidence offered outside the record must show that the petitioner could not have appealed the constitutional claim based upon information in the original trial record. Id. Even if outside evidence is offered in support of a PCR petition, a trial court may deny the petition without a hearing if the petitioner could have appealed the constitutional claim based on information in the original trial record. See State v. Davis (Sept. 30, 1996), Butler App. No. CA95-07-124.
 {¶ 17} In a PCR petition asserting ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate that trial counsel's performance was deficient and fell below an objective standard of reasonable representation, and that the defense was prejudiced by counsel's performance. SeeState v. Gapen, Montgomery App. No. 20454, 2005-Ohio-441. A properly licensed attorney is presumed to execute his or her legal duty in an ethical and competent manner. State v.Krzywkowski, Cuyahoga App. Nos. 83599, 83842, and 84056,2004-Ohio-5966, ¶ 19. To establish prejudice, the petitioner must show that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." Id.
 {¶ 18} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. Id. at ¶ 20. The decision whether to call an expert witness is a matter of trial strategy. In re J.B., 2005-Ohio-7029, ¶ 101. Further, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. Id., citing State v. Hartman, 93 Ohio St.3d 274, 2001-Ohio-1580. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time.Gapen, 2005-Ohio-441 at ¶ 30.
 {¶ 19} A PCR petition does not show ineffective assistance of counsel merely because it presents a new expert opinion that is different from the theory used at trial. State v. Combs (1994),100 Ohio App.3d 90, 103. A petition alleging ineffective assistance of trial counsel is subject to dismissal on res judicata grounds where the petitioner had new counsel on appeal and the issue could otherwise have been raised on direct appeal without resort to evidence outside the record. State v. Cole
(1982), 2 Ohio St.3d 112, syllabus. In addition, even if a petitioner submits an affidavit raising a claim of ineffective assistance based on evidence not presented at trial, a trial court may properly deny the petition without a hearing if that evidence is cumulative of, or alternative to material presented at trial. Combs at 98.
 {¶ 20} Appellant's PCR petition raised eight grounds for relief. In his first ground for relief, appellant argued he received ineffective assistance of counsel because his trial attorney did not inform him of a prosecutor's plea offer until after it was too late. Appellant's jury trial started on June 21, 2004. In an affidavit attached to his petition, appellant stated that after one of his pre-trial court hearings, he met with his trial attorney who informed him he had turned down a plea offer by the state, and that the attorney did not explain why he did not talk to appellant about the plea offer before turning it down. In an affidavit attached to the petition, appellant's guardian ad litem stated that she met with appellant on April 15, 2004 (two months before the trial) regarding the plea offer; appellant told her he wanted to accept the plea; and after appellant's trial attorney failed to return her calls, she called the prosecutor who eventually informed her the plea was no longer available.
 {¶ 21} In dismissing appellant's PCR petition, the juvenile court acknowledged that the plea offer was not part of the trial record, but found that it "could have been raised. It was not brought to the Court's attention and the matter proceeded to trial." We agree. Because appellant knew about the plea offer two months before the trial and discussed it with his guardian ad litem, the issue of his trial attorney's rejection of the plea offer could have been raised before trial, if not by the guardian ad litem, at least by appellant himself. The guardian ad litem, "looking out for [appellant's] interests" (in appellant's words), certainly could have encouraged appellant to bring the issue to the attention of the juvenile court before trial. Arguably, the issue could also have been raised in a motion for a new trial, or on direct appeal. Appellant is consequently barred by res judicata from raising this issue in his petition.
 {¶ 22} In his second ground for relief, appellant argued that his constitutional rights were violated when the juvenile court denied his motion for a third competency evaluation. Appellant argued that "[g]iven that neither Dr. Hopes' report, or Dr. Lee's report, specifically addressed or focused upon the special competency concerns when there is a SYO designation," and were therefore done improperly, "a third psychological evaluation should have been allowed." On direct appeal, this court held that the juvenile court did not abuse its discretion by denying the motion for a third competency evaluation as there was sufficient evidence before the juvenile court to make a well-informed decision regarding appellant's competency.
 {¶ 23} We agree that the competency issue raised in the PCR petition differs from the issue raised on direct appeal. However, we find that appellant is barred by res judicata from raising this issue in his petition. The grand jury found appellant age-eligible for disposition as a SYO in July 2003. In December 2003, the juvenile court held a competency hearing where it heard testimony from both Dr. Lee and Dr. Hopes. Certainly, the failure of both evaluators to specifically address the SYO designation in their reports could have been raised during the hearing. Likewise, it could have been raised on direct appeal. After all, several of appellant's assignments of error on direct appeal related directly or indirectly to the SYO designation and the Ohio's SYO law. Appellant is therefore barred from raising this issue in his petition.
 {¶ 24} In his seventh ground for relief, appellant argued that his rights were violated when the juvenile court denied his motion to appoint an expert to evaluate his amenability to treatment in the juvenile justice system. Appellant argued that a forensic report on the advisability of treatment was needed to adequately determine his amenability. Appellant's petition indicates that appellant's trial counsel addressed the juvenile court twice regarding the need for a forensic report, and specifically about the fact that the prior competency evaluations did not address the amenability or advisability of treatment. On direct appeal, appellant argued that the juvenile court should have ordered a "forensic report concerning the advisability of treatment" prior to appellant's dispositional hearing. This court held that the juvenile court's failure to order the forensic report was not error in light of the fact that the juvenile court had ample information to weigh appellant's prospects for rehabilitation and appropriately determine appellant's punishment. In light of the foregoing, we find that the issue was either raised or could have been raised on direct appeal. Appellant is barred by res judicata from raising this issue in his petition.
 {¶ 25} In his eighth ground for relief, appellant argued that the juvenile court's denial of his motion for the appointment of an expert to evaluate his amenability denied appellant his right to effective assistance of counsel. According to appellant, a defense expert would have greatly assisted the juvenile court during the disposition hearing by highlighting several factors in appellant's past, age, and behavior that reflected his amenability to treatment in the juvenile justice system. We note that the witnesses' testimony at the dispositional hearing addressed some of the factors. Likewise, some of the factors were discussed or touched upon in both competency evaluations. We find that the issue could have been raised on direct appeal when appellant challenged the appropriateness of his sentences. Appellant is barred from raising this issue in his petition.
 {¶ 26} In his third ground for relief, appellant argued that the juvenile court's denial of a third competency evaluation denied appellant his right to effective assistance of counsel. Specifically, appellant argued that his trial counsel's failure to consult with and call as a witness a third competency expert was deficient as it was clear appellant was not competent to stand trial. In support of his argument, appellant presented Jolie Brams' affidavit which highlighted appellant's "remarkably limited and immature perspective on the trial process," the over influence of appellant's mother over him which in turn resulted in his protectiveness of his mother (to the point of accepting blame for anything that went wrong at home), the fact he was hampered by his family loyalty and cultural expectations, and the lack of continuity in his education and the significant gaps in his school enrollment and attendance which in turn hampered his problem solving and reasoning abilities.
 {¶ 27} We note that on direct appeal, appellant challenged, and we upheld, the juvenile court's denial of a third competency evaluation, its finding that appellant was competent to stand trial, the standard used by the juvenile court to evaluate his competency, and his trial counsel's failure to call any defense witnesses. Many of the concerns highlighted by Brams in her affidavit allegedly indicating that appellant was not competent to stand trial were already available in the record. Indeed, Brams admits in her affidavit that some of the concerns were noted in Dr. Hopes' report.
 {¶ 28} We are therefore unconvinced that this particular issue of ineffective assistance of counsel could not have been fairly determined without resort to evidence outside the record. Brams has basically repackaged information already available in the record in order to second-guess appellant's trial counsel. See State v. Lawson (1995), 103 Ohio App.3d 307. Upon reviewing Brams' concerns, we conclude that appellant has failed to set forth sufficient operative facts establishing a claim of ineffective assistance of counsel under his third ground for relief.
 {¶ 29} In his fourth, fifth, and sixth grounds for relief, appellant argued his trial counsel was ineffective for failing to (1) adequately examine, at the suppression hearing, Dr. Hopes and Detective Mark Hayes (the detective who interrogated appellant) regarding appellant's competency to waive his Miranda rights; (2) call an expert witness at trial to rebut the testimony of the coroner as to the cause of death of the victim; and (3) call an expert witness at trial regarding appellant's culpability, as a young teenager, to commit child endangering and murder.
 {¶ 30} In support of those grounds, appellant presented the affidavits of Dr. Werner Spitz and Brams. In her affidavit, Brams criticized trial counsel's inadequate understanding "of the underlying experiences and competencies needed to knowingly waive" Miranda rights, and his failure, as a result, to ask appropriate questions to Dr. Hopes and Det. Hayes which would have shown appellant's "developmental, experiential, and reasoning deficits[.]" Brams also stated that based on a review of records and her interview of appellant (which both highlighted his age, family dynamics, prior abuse inflicted upon him by relatives as a form of discipline, and other factors), appellant did not have the intellectual wherewithal to predict the consequences of his behavior, and therefore, was not reckless in causing the death of his brother.
 {¶ 31} In his affidavit, Dr. Spitz stated that the victim died as a result of an injury to the heart which was, in his opinion, the result of chest compressions performed by a sibling of appellant during attempted resuscitation. Dr. Spitz also stated that because there was no evidence of strikes or blows to the victim, or any type of trauma indicative of strangulation, smothering, or neck hold, it was his opinion the victim died accidentally from improperly administered CPR.
 {¶ 32} Appellant also presented the affidavit of his trial attorney. The affidavit stated that after interviewing the coroner and "Dr. Swinehart from the Butler County Coroner's Office, I did not believe an independent witness was necessary to rebut their testimony. However, at trial, [the coroner] did not testify to exactly what he told me in the interview. It never occurred to me to ask for a continuance in order to consult with and seek the testimony of an independent medical expert. It never occurred to me to consult with and seek the testimony of an expert witness to evaluate and testify to [appellant's] culpability to commit child endangering and murder[.]"
 {¶ 33} With regard to the fourth ground for relief, appellant argued that because trial counsel did not adequately understand "the underlying experiences and competencies needed to knowingly waive one's Miranda rights," he failed to ask appropriate questions, and as a result, the information presented at the suppression hearing did not encompass the totality of the circumstances. On direct appeal, appellant challenged his confession on the ground he did not voluntarily waive hisMiranda rights. We held that appellant's confession was properly admitted as the record did not support the conclusion that appellant's age and mentality prevented him from understanding the rights he was waiving. Upon reviewing the transcript of the suppression hearing in light of Brams' concerns as set forth in her affidavit, we are unconvinced that trial counsel's performance fell below an objective standard of reasonableness when he examined Dr. Hopes and the coroner at the hearing. We therefore conclude that appellant has failed to set forth sufficient operative facts establishing a claim of ineffective assistance of counsel under his fourth ground for relief.
 {¶ 34} With regard to appellant's fifth ground for relief (failure to call an expert witness to rebut the coroner's testimony), we note that in his petition, appellant acknowledged that his trial attorney argued, during cross-examination of the coroner, and throughout the trial, that a sibling of appellant actually caused the death of the victim when he improperly performed chest compressions on the victim, and that trial counsel asked and received an intervening cause of death jury instruction. On direct appeal, appellant specifically argued that his trial counsel was ineffective for failing to call any defense witnesses. In addressing this argument, we held that the decision of appellant's trial counsel not to call an expert witness and to rely instead on the cross-examination of the coroner was a matter of sound trial strategy which did not constitute ineffective assistance of counsel. We noted that "the record shows that appellant effectively cross-examined [the coroner], who testified that it was `possible' that chest compressions administered by an inexperienced person caused the victim's death." In re J.B.,2005-Ohio-7029, ¶ 1011-02.
 {¶ 35} In his affidavit, trial counsel simply stated it did not occur to him to ask for a continuance to consult with and seek the testimony of an expert witness after the coroner's testimony differed from what he told the attorney during an interview. The affidavit does not indicate in what respect the coroner's testimony differed. Although, through Dr. Spitz's affidavit, we now know exactly what a defense expert could have testified to at trial, this information does not change the fact that decisions to call a witness are within the purview of trial counsel's trial tactics. See State v. Lugli, Erie App. No. E-01-032, 2003-Ohio-479. Upon reviewing Dr. Spitz's affidavit and trial counsel's thorough and effective cross-examination of the coroner as to whether chest compressions could have caused the victim's death, we cannot say that trial counsel's performance fell below an objective standard of reasonableness when he failed to call an expert witness. Appellant is barred from raising this issue in his petition.
 {¶ 36} In his sixth ground for relief, appellant argued his trial counsel was ineffective for failing to call an expert witness to rebut the state's case that appellant acted recklessly. On direct appeal, appellant argued that the state failed to prove he acted recklessly regarding the child endangering count. Appellant also argued that his delinquency adjudication based on the commission of child endangering and murder was against the manifest weight of the evidence. Appellant asserted that the weight of the evidence showed that improper chest compressions performed by a sibling were the cause of the victim's death, not physical abuse by appellant.
 {¶ 37} Based on appellant's written statement that he struck the victim with a metal bar "on purpose" and grabbed the victim by the front of the neck until the victim stopped crying, the coroner's testimony the victim had an injury to his neck strap muscle and multiple, recent contusions on his back, and the sibling's testimony the victim had no bruises on his back earlier in the evening, we held there was sufficient evidence that appellant acted recklessly. We further held that the juvenile court's delinquency finding based on the commission of child endangering and murder was not against the manifest weight of the evidence. Again, we relied on the foregoing evidence, as well as the sibling's testimony that appellant told him to tell the authorities they both killed the victim, the coroner's testimony it was possible the fatal injury occurred as a result of an inexperienced person administering chest compressions, and the sibling's testimony he was the only one who gave the victim chest compressions by softly pressing the victim's chest with his hands.
 {¶ 38} Upon reviewing trial counsel's performance in light of the affidavits of Dr. Spitz and Brams, and the statutory definition of "recklessly" as applied at trial, we are unconvinced that trial counsel's performance fell below an objective standard of reasonableness when he did not call an expert witness such as Dr. Spitz or Brams regarding whether appellant acted recklessly. We therefore find that appellant has failed to set forth sufficient operative facts establishing a claim of ineffective assistance of counsel under his sixth ground for relief.
 {¶ 39} In light of all of the foregoing, we find that the trial court did not err by denying appellant's PCR petition without holding an evidentiary hearing. Appellant's first, second, and third assignments of error are overruled.
 {¶ 40} Assignment of Error No. 4:
 {¶ 41} "THE TRIAL COURT ERRED WHEN IT DENIED [APPELLANT'S] MOTION FOR RELIEF FROM JUDGMENT."
 {¶ 42} Appellant filed his PCR petition on May 3, 2005. On May 23, with leave of court, the state filed an "answer to petition for post-conviction relief; motion for pre-hearing review and dismissal without hearing." The state argued that appellant had failed to establish "sufficient operative facts demonstrating a lack of effective assistance of trial counsel or to overcome the bar of res judicata," and that therefore his PRC petition should be dismissed without a hearing. The juvenile court dismissed appellant's PCR petition two days later. The juvenile court's decision was mailed to appellant's counsel on June 4 and received on June 6. Meanwhile, on June 3, appellant mailed a "response to the state's motion for pre-hearing review and dismissal without hearing and reply to the state's answer to petition for post-conviction relief."
 {¶ 43} Following the dismissal of his PCR petition, appellant filed a motion for relief from judgment under Civ.R. 60(B)(5). Appellant argued that the juvenile court violated his right to due process when it prematurely dismissed his PCR petition without affording him the opportunity to respond to the state's answer and motion under Loc.R. 3.06 of the Butler County Court of Common Pleas, General Division, or move for summary judgment under R.C. 2953.21. As a result, appellant argued, he was entitled to relief under Civ.R. 60(B)(5) and GTE Automatic Elec.v. ARC Industries (1976), 47 Ohio St.2d 146. The juvenile court denied appellant's Civ.R. 60(B)(5) motion. The court found that R.C. 2953.21, and not the Ohio Civil Rules or the Rules of the Butler County Common Pleas Court, General Division, applied, and that there was no provision under R.C. 2953.21 for appellant to respond to the state's answer to the PCR petition.
 {¶ 44} On appeal, appellant argues that the juvenile court erred when it found that the Ohio Civil Rules and Loc.R. 3.06 did not apply to his PCR petition. Appellant contends that since the state did not just reply to his PCR petition but also filed amotion for a pre-hearing review, Loc.R. 3.06(d), which does not conflict with R.C. 2953.21, applies.
 {¶ 45} Loc.R. 3.06(d) provides in relevant part that "any memorandum in opposition to a motion * * * shall be filed within fourteen (14) days of the filing of the motion and the movant shall file any reply memorandum in support of the motion within seven (7) days of the filing of the last memorandum in opposition." R.C. 2953.21(D), in turn, provides that "[w]ithin ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are raised, either party may move for summary judgment."
 {¶ 46} A postconviction proceeding is civil in nature and, therefore, generally governed by the Rules of Civil Procedure. See State v. Nichols (1984), 11 Ohio St.3d 40, 41-42. However, a postconviction proceeding is also a statutory creation and as such, is controlled by the statute's procedural requirements when they conflict with the civil rules. State v. Gipson (Sep. 26, 1997), Hamilton App. Nos. C-960867 and C-960881. This principle may logically be extended to local rules. Id. Thus, local rules apply in postconviction proceedings to the extent they are not inconsistent with R.C. 2953.21. Id.
 {¶ 47} We are not convinced that the pleading filed by the state in response to appellant's PCR petition qualifies as a motion under Loc.R. 3.06(d). It is well-established that it is the substance of a pleading, not the caption, that determines the nature of a pleading. See State v. Becker, Clermont App. No. CA2005-06-050, 2006-Ohio-148. Although captioned as an answer/motion, the state's pleading simply brought to the court's attention the legal basis for dismissal of a PCR petition and added nothing to what the court, presumptively, already knew and was otherwise required to apply to the claims set forth in the petition. Gipson. Therefore, by its terms, Loc.R. 3.06(d) did not afford appellant an opportunity to respond to the state's answer/motion. See id.
 {¶ 48} Even if Loc.R. 3.06(d) could be so construed, R.C.2953.21 does not require the state to respond to a PCR petition and allows a court to dismiss the petition in the absence of any response by the state. Gipson; State v. Sklenar (1991),71 Ohio App.3d 444 (holding that R.C. 2953.21[D], which sets forth the time period for the state's answer to a PCR petition, is directory and not mandatory). A trial court is not required to consider the state's answer, if any, before ruling on the petition. State v. Kingsolver, Greene App. No. 02 CA 84, 2003-Ohio-3833, ¶ 9. Likewise, R.C. 2953.21(D) "does not specify that the petitioner be given an opportunity to reply to any motion filed on behalf of the respondent." State v. Caldero,
Cuyahoga App. No. 83729, 2004-Ohio-2337, ¶ 5. In addition, a trial court may dismiss a PCR petition without affording the defendant an opportunity to file any supplemental or responsive pleading where the petition fails to set forth any substantive ground upon which relief can be granted. See State v. Wilson
(Aug. 5, 1996), Clermont App. No. CA96-02-020.
 {¶ 49} Appellant's reliance on State v. Pless (1993),91 Ohio App.3d 197, is misplaced. In Pless, the trial court ruled upon the state's motion for summary judgment prior to the expiration of the 14-day limit in the local rules for the petitioner's response. The Sixth Appellate District found that the petitioner's right of due process was violated when the trial court granted summary judgment without allowing the petitioner to respond. Id. at 199. Because Pless involved a summary judgment motion, we find this case to be inapposite. See Caldero;Gipson.
 {¶ 50} We therefore find that the trial court did not err by taking action on appellant's PCR petition without waiting for appellant's reply to the state's answer, and by subsequently denying his Civ.R. 60(B)(5) motion under R.C. 2953.21. Appellant's fourth assignment of error is overruled.
 {¶ 51} Judgment affirmed.
Powell, P.J., and Walsh, J., concur.